IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

MITCHELL L. BERRIOS,                                                    PLAINTIFF


v.                          Civil No. 5:23-CV-05019-TLB-CDC


OFFICER JOSHUA BAILEY, Fayetteville Police Department; and
CORPORAL D. HARWOOD,                                        DEFENDANTS.


## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

Plaintiff Mitchell L. Berrios has filed a civil rights action pursuant to 42 U.S.C. § 1983. Berrios proceeds *pro se* and *in forma pauperis* (IFP). *See* (ECF No. 9). Pursuant to the provisions of 28 U.S.C. §§ 636(b)(1) and (3), the Honorable Timothy L. Brooks, United States District Judge, referred this case to the undersigned for the purposes of making a Report and Recommendation on Defendants' Motion for Summary Judgment. (ECF No. 38). Berrios has filed his Response. (ECF No. 43). This matter is therefore now ripe for the Court's consideration. For the reasons outlined below, the undersigned RECOMMENDS that the Motion for Summary Judgment, (ECF No. 38), be GRANTED and that this matter be dismissed with prejudice.

### I.   BACKGROUND

On January 25, 2023, Plaintiff initiated a civil rights complaint pursuant to 42 U.S.C. § 1983.[1]  (ECF No. 1). Plaintiff's original complaint identified Officer Joshua Bailey, Fayetteville Police Department, Nancy Pryor, Washington County Public Defender, and Corporal

---

[1] This section does not endeavor to describe every docket entry, only those relevant to the Court's consideration of Defendants' Motion for Summary Judgment.

1

D. Harwood as defendants and generally alleged that he was arrested without probable cause on May 3, 2022, and that his due process rights had been violated. *Id.* Because Plaintiff neither submitted an *in forma pauperis* ("IFP") application nor paid the full statutory filing fee when he filed his complaint, this Court ordered Plaintiff, who was a pretrial detainee at the Washington County Detention Center ("WCDC") at the time, to either file a complete IFP application or pay the full filing fee by February 15, 2023, failing which this matter would be subject to dismissal for failure to prosecute. (ECF Nos. 2, 4).

On February 13, 2023, Plaintiff submitted an IFP application but disputed the information provided in the inmate account and assets form. (ECF No. 5). In response to his objection, this Court ordered Plaintiff to submit copies of his inmate account statements for the six months preceding his initiation of this action so that this Court could calculate his initial partial filing fee based on the formula prescribed by law, *see* 28 U.S.C. § 1915(b). On February 23, 2023, Plaintiff submitted a supplement to his complaint. (ECF No. 7). On March 8, 2023, Plaintiff submitted an amended IFP application. (ECF No. 8). Upon review of the amended IFP application, this Court granted Plaintiff's request to proceed IFP, and cautioned him that he must provide the Court and parties with updated contact information within 30 days of any such change, failing which this matter would be subject to dismissal. (ECF No. 9).

Upon preservice review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A(a), this Court recommended that Plaintiff's claims against Public Defender Nancy Pryor be dismissed without prejudice for failure to state a claim upon which relief can be granted, *see* 28 U.S.C. § 1915(b)(1), and that the remaining claims be stayed pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), because the factual predicate of Plaintiff's claims was also the subject of ongoing

2

criminal proceedings. (ECF No. 11). This Court further recommended that Plaintiff be ordered to file a motion to reopen the case within 30 days of the conclusion of those criminal proceedings, failing which this matter would be subject to dismissal. *Id.* Judge Brooks adopted those recommendations over Plaintiff's objection and this case was administratively closed pursuant to *Younger*. (ECF No. 14).

Approximately five months later, on September 13, 2023, Plaintiff filed a Motion to Reopen the case after the criminal case giving rise to Plaintiff's claims was dismissed. (ECF No. 15). That same day, this Court granted Plaintiff's Motion to Reopen and ordered Plaintiff to submit an amended complaint describing his claims and cautioned him that the amended complaint must not contain claims that were previously dismissed for failure to state a claim upon which relief may be granted. (ECF No. 17). On September 25, 2023, Plaintiff filed an Amended Complaint identifying Officer Joshua Bailey and Cpl. D. Harwood as defendants in their individual capacities and alleging two claims for relief: (1) on May 3, 2022, Defendants Officer Joshua Bailey and Cpl. D. Harwood fabricated evidence by saying that his mother, Ms. Valerie Jeremiah, claimed that he had choked her to establish probable cause for his arrest; and (2) on May 3, 2022, Defendants Bailey and Harwood failed to provide him and his mother with necessary medical care.[2] (ECF No. 18). On September 26, 2023, this Court ordered that Defendants Bailey and Harwood be served with the Amended Complaint. (ECF No. 19). On October 2, 2023, Plaintiff filed a supplement, adding further factual detail to his claims. (ECF No. 21).

On October 20, 2023, Defendants filed their Answer. (ECF No. 25). After the

---

[2] Plaintiff's Amended Complaint expressly identifies three claims for relief but claim three merely provides additional factual detail regarding claim one (arrest without probable cause) and claim two (failure to provide necessary medical care). *See* (ECF No. 18).

Defendants indicated that they did not intend to pursue the affirmative defense that Plaintiff first failed to exhaust his administrative remedies before pursuing this action, (ECF No. 28), this Court entered an initial scheduling order governing discovery and directing defendants to file a motion for summary judgment on the merits by March 29, 2024, (ECF No. 29).   Upon the Defendants' request, this Court extended the deadlines to complete discovery and to file a motion for summary judgment.   (ECF Nos. 32, 33).   On April 30, 2024, Defendants filed a Motion for Summary Judgment, including four exhibits, a memorandum, and statement of facts in support.   (ECF Nos. 38-40).   That same day, this Court ordered Plaintiff to submit a response and provided instructions on how to respond.   (ECF No. 41).   Plaintiff's response was due May 21, 2024.   *Id.*   On May 20, 2024, Plaintiff filed his response, saying that he reviewed the body cam videos and was no longer claiming the defendants fabricated evidence to establish probable cause for his arrest by claiming that his mother had said that he had choked her but that he maintains that he did not, in fact, choke her.   (ECF No. 43).

## II. LEGAL STANDARD

The court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party." *Ward v. Olson*, 939 F. Supp. 2d 956, 961 (D. Minn. 2013) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).   A fact is material only when its resolution would affect the outcome of a case. *Anderson*, 477 U.S. at 248.

Further, the moving party bears the initial burden of identifying "those portions of the record which it believes demonstrate the absence of a genuine issue of material fact." *Jackson v.*

*United Parcel Serv., Inc.*, 643 F.3d 1081, 1085 (8th Cir. 2001).  In response, the nonmoving party "may not rest upon mere denials or allegations, but must instead set forth specific facts sufficient to raise a genuine issue for trial." *Forrest v. Kraft Foods, Inc.*, 285 F.3d 688, 691 (8th Cir. 2002). In considering a summary judgment motion, the court views all the evidence and inferences in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255.

### III. FACTS

The facts in this case are largely undisputed.[3]  On May 3, 2022, Defendant Fayetteville Police Officer Joshua Bailey was dispatched to 539 Gabbard Drive, one half of a duplex, in Fayetteville, Arkansas in response to a domestic disturbance call.  (ECF No. 38-2, p. 2).  A resident of 541 Gabbard Drive, the second half of the duplex, had called 911 to report that his neighbor at 539 Gabbard Drive, later identified as Plaintiff Mitchell Berrios, was assaulting his mother, Valerie Jeremiah.  *Id.*  When Defendant Bailey arrived, he encountered Plaintiff and recognized him from previous encounters.  *Id.*  A third party sitting in a van parked in the driveway was also present.  *Id.*  Defendant Bailey's body cam was operating at the time and captures the events leading up to and following Plaintiff's arrest, including Defendant Bailey's conversation with Ms. Jeremiah.  (*Id.*); *see also* (ECF No. 37, Joshua Bailey, Axon_Body_3_Video_2022-05-03_0056_X6039CGHX ("Bailey Body Cam")).

During his initial encounter with Plaintiff, Defendant Bailey could smell a strong odor of

---

[3] Plaintiff's Response to Defendants' Motion for Summary Judgment was neither sworn under penalty of perjury nor notarized.  (ECF No. 43).  Thus, this Court considers Plaintiff's verified Amended Complaint in determining whether there are any material fact disputes that preclude summary judgment.  *See Ward v. Moore*, 414 F.3d 968, 970 (8th Cir. 2005) ("Because [plaintiff] verified her second amended complaint under penalty of perjury, it is the equivalent of an affidavit and can serve as her response to the defendants' summary judgment motion under Federal Rule of Civil Procedure 56(e).").

alcohol emanating from Plaintiff's breath. (ECF No. 38-2, p. 3). Defendant Bailey spoke with Plaintiff and told him that he needed to check on Ms. Jeremiah before he could leave. (*Id.*). Plaintiff eventually allowed Defendant Bailey to enter the house to speak to Ms. Jeremiah. (*Id.*). Defendant Bailey was aware from his previous encounters with Plaintiff that Ms. Jeremiah is disabled and hard of hearing. (*Id.*). When he spoke to Ms. Jeremiah, she was initially sitting on the recliner in her room. (*Id.*). This next point, however, is in dispute: Defendant Bailey says that when he asked Ms. Jeremiah how she was doing, Ms. Jeremiah eventually told him that Plaintiff choked her and pointed to her neck. (*Id.*) She said it hurt but that she was able to breathe. (*Id.*) Defendant Bailey included this information in his police report, (ECF No. 38-2, p. 6), and the probable cause statement in support of Plaintiff's arrest, (ECF No. 38-2, pp. 8-9). In his Amended Complaint and at his deposition, Plaintiff says that the defendants fabricated this evidence because his mother never told them that he had choked her. (ECF No. 18, p. 5); (ECF No. 38-1, pp. 26-27).[4]

Defendant Bailey's body cam video shows Defendant Bailey talking to Plaintiff for over ten minutes before Plaintiff agrees to allow Defendant Bailey to check on Ms. Jeremiah's safety. (ECF No. 37, Bailey Body Cam at 6:06:49). During this time, Defendant Bailey remains calm and maintains a conversational tone with Plaintiff, never raising his voice. (*Id.* at 5:56:18—6:06:40). Plaintiff's speech, by contrast, is plainly slurred, he grows agitated, and raises his voice, exclaiming his grievances against his neighbors. (*Id.*) At one point, he stumbles and falls onto

---

[4] In his Response to Defendants' Motion for Summary Judgment, Plaintiff says that after having watched Defendant Bailey's body cam video, he no longer claims that Defendant Bailey fabricated evidence but maintains that he never choked his mother. (ECF No. 43). Plaintiff's change in position is addressed below.

6

the ground.   (*Id.* at 6:05:56).   When Defendant Bailey finally enters the house, he follows Plaintiff, proceeding directly to the back room, where Ms. Jeremiah is sitting in a recliner.   (*Id.* at 6:07).   Defendant Bailey asks her how she is doing and directs Plaintiff to speak to another officer about his complaints about his neighbors and then proceeds to talk to Ms. Jeremiah alone.   (*Id.* at 6:08:26—6:08:45).   The body cam video shows Ms. Jeremiah telling Defendant Bailey that she is "basically ok, but really, no."   (*Id.* at 6:08:45).   Upon further inquiry, Ms. Jeremiah told Defendant Bailey that Plaintiff choked her that night.   (*Id.* at 6:09:51—6:10:00).   Defendant Bailey told Ms. Jeremiah that he could see bruising on her neck and saw an injury on her chest, by her collar bone.   (*Id.*).   The body cam video also shows Defendant Bailey using different techniques to communicate with Ms. Jeremiah, who is hard of hearing—at one point he speaks clearly and directly into her ear, and another time he writes his question on his notepad for Ms. Jeremiah to read.

There is no dispute about any additional facts.   After finishing his conversation with Ms. Jeremiah, Defendant Bailey then walked back outside and asked Plaintiff what had happened. (ECF No. 38-2, p. 4).   Defendant Bailey explained to him that Ms. Jeremiah had told him that Plaintiff had choked her, and that Plaintiff was under arrest for second degree domestic battery for the alleged assault on Ms. Jeremiah and disorderly conduct for causing alarm to the public.   (*Id.*).   Defendant Bailey then transported Plaintiff to the Washington County Detention Center ("WCDC"), where he was booked into jail on those charges.   (*Id.*).

Before Defendant Bailey left the scene to transport Plaintiff to the WCDC, he delegated further investigation, including the task of taking pictures of Ms. Jeremiah's injuries to other officers who had arrived at the scene, including Defendant Harwood.   (ECF No. 37, Joshua Baily

Body Cam at 6:19); (ECF No. 38-3, p. 3).   Defendant Harwood spoke to Ms. Jeremiah and took pictures of her injuries. (ECF No. 38-3, p. 2).   Again, the parties dispute what Ms. Jeremiah told Defendant Harwood.   Defendant Harwood says that she told him that Plaintiff "had been drinking all day, came into her room upset, and placed his hands around her throat," (ECF No. 38-3, pp. 2-3), and he included this information in his police report, (ECF No. 38-3, p. 5).   Plaintiff claims that Defendants "fabricated" this evidence.   (ECF No. 18, p. 5); (ECF No. 38-1, pp. 26-27).

Defendant Harwood, like Defendant Bailey, was wearing a body camera during this incident.   (ECF No. 37, Derek Harwood Axon_Body_3_Video_2022-05-03_0059_X6039CHYN ("Harwood Body Cam")).   The body camera video captures Defendant Harwood's conversation with Ms. Jeremiah.   (*Id.*).   Defendant Harwood and Ms. Jeremiah are clearly having a more difficult time communicating with each other.   (*See* ECF No. 37, Harwood Body Cam, 6:27:30—6:33).   Ms. Jeremiah can read lips, but she cannot see Defendant Harwood's face because the overhead light is in her eyes.   Defendant Harwood then writes his questions on a notepad, asking Ms. Jeremiah if Plaintiff had scared her that night.   (*Id.* at 6:31).   Ms. Jeremiah reads the question and responds, "yes," explaining that she tries to keep her mouth shut.   (*Id.*).

It is also undisputed that when Defendant Bailey arrived, he observed that Plaintiff had a black eye.   Plaintiff says that his neighbor, who had called 911 to report the disturbance, had "knocked [him] out."   (ECF No. 18, p. 5).   But neither Defendant contacted emergency medical services (EMS) to examine his injuries (or his mother's).   At his deposition, Plaintiff explained that he thought it would have been "prudent" if the officers to have done more to address his injuries, but he further explained that he was no longer going to pursue the claim that officers failed to properly treat his injuries.   (ECF No. 38-1, pp. 24-28).   Instead, he wanted to focus on the

claim that the defendants fabricated evidence—namely, that his mother told them that he choked her—to establish probable cause for his arrest.   (*Id.*).

## IV. ANALYSIS

Plaintiff's Amended Complaint asserts two claims for relief: (1) on May 3, 2022, Defendants Bailey and Harwood fabricated evidence to establish probable cause for his arrest; and (2) Defendants Bailey and Harwood failed to render aid.   (ECF No. 18).   Defendants argue that they are entitled to qualified immunity with respect to both claims.   This Court agrees.

To determine whether Defendants are entitled to qualified immunity, the Court conducts a two-part inquiry: "(1) whether the facts, viewed in the light most favorable to [Plaintiff], demonstrate the deprivation of a constitutional or statutory right; and (2) whether that right was clearly established at the time of the deprivation." *Ryno v. City of Waynesville*, 58 F.4th 995, 1004 (8th Cir. 2023).   Courts have "discretion to decide which of the two prongs of the qualified-immunity analysis to tackle first." *Id.* at 1005 (quoting *Lombardo v. City of St. Louis*, 38 F.4th 684, 690 (8th Cir. 2022)).   "If [courts] conclude that the alleged facts do not violate a constitutional right, then [courts] need not address the second inquiry, and the defendants will be entitled to qualified immunity." *Id.* (quoting *Groenewold v. Kelley*, 888 F.3d 365, 371 (8th Cir. 2018)).

Here, for the reasons described below, when viewed in the light most favorable to Plaintiff, the undisputed facts in the summary judgment record show that the Defendants did not violate Plaintiff constitutional rights.   Alternatively, Plaintiff has either conceded or abandoned his claims.   Defendants' Motion for Summary Judgment should therefore be granted.   This Court addresses each claim, in turn, below.

**A. Claim Two – Failure to Render Medical Aid**

At his deposition, Plaintiff advised that he was abandoning claim two—failure to render medical care—and that he intended to proceed only with respect to his claim that Defendants Bailey and Harwood fabricated evidence to establish probable cause for his arrest (claim one). (ECF No. 38-1, pp. 24-28). Plaintiff, therefore, explicitly abandoned claim two. Accordingly, Plaintiff's claim that the Defendants failed to render proper medical care is subject to dismissal on that basis.

In any event, this claim fails on the merits. In determining whether the Defendants' failure to seek medical care for Plaintiff violated Plaintiff's constitutional rights, courts apply the Eighth Amendment "deliberate indifference" standard. *See Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (applying the Eighth Amendment "deliberate indifference" standard to an arrestee's claim that he was denied proper medical care during his arrest). The deliberate-indifference standard requires "both an objective and subjective analysis." *Id.* (quoting *Hall v. Ramsey Cnty.*, 801 F.3d 912, 920 (8th Cir. 2015)).

"To meet the objective component of the deliberate-indifference standard, the complaint must plead facts to demonstrate that [plaintiff] suffered an objectively serious medical need." *Id.* (citing *Grayson v. Ross*, 454 F.3d 802, 808-09 (8th Cir. 2006)). "To be objectively serious, a medical need must have been diagnosed by a physician as requiring treatment or must be so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Id.* Courts "determine whether an objectively serious medical need exists based on the attendant circumstances, irrespective of what the officer believes the cause to be." *Id.* Here, it is undisputed that Plaintiff was intoxicated, but he was awake, talking to officers, and responding to

10

questions.   In other words, there is no evidence in the record that Plaintiff was exhibiting any symptoms aside from ordinary alcohol intoxication.

The subjective component "requires a showing that [defendant] actually knew [plaintiff] needed medical care and disregarded a known risk to the arrestee's health."   *Id.* at 965.   Here, again, while it is undisputed that Defendants Bailey and Harwood were aware that Plaintiff was intoxicated, Plaintiff has offered no evidence suggesting that his medical condition required prompt medical attention, he was not vomiting, he did not complain of a head injury, there is no evidence that he ingested any controlled substances in addition to alcohol, and, indeed, he did not request any medical care.   Thus, Defendants did not violate Plaintiff's constitutional rights in failing to provide him with medical care.[5]   *Cf. Barton*, 820 F.3d at 967 (concluding that plaintiff had established a claim for deliberate indifference where defendant was aware that plaintiff was exhibiting symptoms substantially more serious than ordinary intoxication but failed to seek medical attention).   Defendants, therefore, are entitled to summary judgment with respect to this claim.

### B.  Claim One -- Probable Cause for Arrest

In his Amended Complaint, Plaintiff contends that the Defendants fabricated evidence to establish probable cause for his arrest by claiming that his mother, Ms. Jeremiah, said that he had choked her on the night of his arrest.   (ECF No. 18).

The Fourth Amendment protects the "right of the people to be secure in their persons,

---

[5] To the extent that Plaintiff claims that the Defendants failed to provide adequate medical care to his mother, Ms. Jeremiah, Plaintiff, a nonlawyer, has no right to represent another entity.   *See Knoefler v. United Bank of Bismark*, 20 F.3d 347, 348 (8th Cir. 1994) (providing that "[a] nonlawyer . . . has no right to represent another entity").   Those claims are therefore similarly dismissed.

houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV.

A warrantless arrest violates the Fourth Amendment "unless it is supported by probable cause."

*Webster v. Westlake*, 41 F. 4th 1004, 1010 (8th Cir. 2022) (citing *Borgman v. Kedley*, 646 F.3d

518, 522-23 (8th Cir. 2011)).    "Probable cause exists when the totality of the circumstances at the

time of arrest would lead a reasonable person to think the defendant committed or is committing a

crime."    *Id.* (citing *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013)).    Further,

"arguable probable cause exists even where an officer mistakenly arrests a suspect believing it is

based on probable cause if the mistake is 'objectively reasonable.'"    *Joseph v. Allen*, 712 F.3d

1222, 1226 (8th Cir. 2013).

It is undisputed that Defendants arrested Plaintiff on May 3, 2022, for second degree

domestic battery in violation of Ark. Code § 5-26-304 and disorderly conduct in violation of § 5-

71-207.    (ECF No. 38-2, p. 8).    Pursuant to § 5-26-304(a),

> A person commits domestic battering in the second degree if:
>
> . . .
>
> (4) the person knowingly causes physical injury to a family or
> household member he or she knows to be sixty (60) years of age
> or older or twelve (12) years of age or younger.

Ark. Code § 5-26-304(a)(4).

Ark. Code § 5-71-207 provides that:

> (a) A person commits the offense of disorderly conduct if, with the
> purpose to cause public inconvenience, annoyance, or alarm or
> recklessly creating a risk of public inconvenience, annoyance or
> alarm, he or she:
>
>> (1) Engages in fighting or in violent, threatening, or tumultuous
>> behavior;

(2) Makes unreasonable or excessive noise;

. . . .

Ark. Code § 5-71-207(a).

It is further undisputed that the Defendants arrived at Plaintiff's address in response to Plaintiff's neighbor calling 911 to report a domestic disturbance at Plaintiff's address and that Plaintiff and his neighbor live in a duplex with shared walls.   While Plaintiff asserts in his Amended Complaint and claimed in his deposition that his mother, Ms. Jeremiah, never told police that he had choked her, Defendants have presented evidence, including their sworn affidavits and body cam video, demonstrating that Ms. Jeremiah did, in fact, tell police that Plaintiff had choked her that night.   Plaintiff, for his part, presents no facts rebutting this evidence, showing there is a genuine issue for trial.   *See United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (explaining that once the moving party meets its burden, "the party opposing summary judgment must not rest on the allegations in its pleadings; it must set forth specific facts showing that there is a genuine issue for trial").   This Court, therefore, considers undisputed the fact that Ms. Jeremiah told Defendants that Plaintiff had choked her that night.   *See* Fed. R. Civ. P. 56(e)(2) (when a party fails to properly address another party's assertion of fact as required pursuant to Fed. R. Civ. P. 56(c) the court may "consider the fact undisputed for the purposes of the motion"); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contracted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment.").[6]

---

[6]  Plaintiff maintains that he did not, in fact, choke his mother the evening of May 3, 2022.   (ECF No. 43).   But this Court need not decide whether Plaintiff choked his mother.   Rather, this

Accordingly, under the totality of the circumstances, it was not unreasonable, as a matter of law, for Defendants to believe the crimes of second-degree battery and disorderly conduct were being committed where, as here, it is undisputed that Defendants responded to Plaintiff's residence after a 911 call from a *neighbor* reporting a domestic disturbance; Plaintiff was intoxicated; Ms. Jeremiah, who was identified as Plaintiff's mother, also resided at that address; and Ms. Jeremiah *reported* that Plaintiff had hurt her that night by choking her. On this record, therefore, Defendants had probable cause to arrest Plaintiff without a warrant. Accordingly, Defendants are entitled to summary judgment on claim one, as well.[7]

## IV. CONCLUSION

In sum, and for the reasons described above, this Court recommends that Defendants' Motion for Summary Judgment, (ECF No. 38), be **GRANTED**, and that this matter be **DISMISSED WITH PREJUDICE**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

---

Court's inquiry is limited to considering whether a reasonable officer upon hearing Ms. Jeremiah's report that her son had choked her would believe given totality of the circumstances that Plaintiff had committed a crime. *See Ulrich*, 715 F.3d at 1059 (defining probable cause to arrest as "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense"). Upon review of the undisputed facts in the summary judgment record, this Court answers that question in the affirmative.

[7] Plaintiff expressly concedes in his Response to Defendants' Motion for Summary Judgment that the Defendants' body camera videos show that Ms. Jeremiah tells the Defendants that he had choked her. Alternatively, therefore, this claim is subject to dismissal as waived. *See Satcher v. Univ. of Arkansas at Pine Bluff Bd. of Trustees*, 558 F.3d 731, 735 (8th Cir. 2009) ("failure to oppose a basis for summary judgment constitutes a waiver of that argument").

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

**STATUS OF REFERRAL:**   This matter is no longer referred.

**DATED** this 27th day of September 2024.

*/s/ Christy Comstock*

CHRISTY COMSTOCK
UNITED STATES MAGISTRATE JUDGE